**In re the Voluntary Dissolution of AMITAD, INC., formerly known as Space Center Minnesota,**

**and**

**Quintar, Inc., formerly known as Space Center Chicago, Respondents,**

**MBC, Inc., et al., Appellants.**

**Nos. C9–86–1516, C2–86–1650.**

Court of Appeals of Minnesota.

Feb. 17, 1987.

James A. Rubenstein, Steven J. Dzurak, Sidney L. Levin, Minneapolis, for respondents.

Timothy A. Sullivan, St. Paul, for appellants.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

These additional appeals of a judgment creditor (MBC, Inc.) in receivership proceedings relate closely to issues already reviewed in *Amitad, Inc. v. MBC, Inc.*, 397 N.W.2d 594 (Minn.Ct.App.1986). There, we reversed and remanded for further trial court findings on decisions appearing to unjustly impair the judgment creditor's rights. These appeals challenge unexplained trial court orders permitting trans-

actions with related corporations. Here also, we remand for findings.

## FACTS

Our prior opinion records the relationships of the parties and the history of the Amitad-Quintar receivership proceedings. *Id.* at 595–96. Transactions of the receiver prompt the present appeals.[1]

### I. Quintar, Inc.

Quintar is a warehousing business. The receiver decided to sell all of Quintar's assets in order to stop losses attributable to Quintar. On May 31, 1986, the receiver gave the warehouse lessor notice of termination of the lease, effective September 30, 1986.

At the time of the lease termination, Quintar officials advised the receiver that Lincoln Distribution Services, Inc. was interested in purchasing Quintar. Lincoln Distribution is also a wholly-owned subsidiary of Space Center, Inc. Quintar agents drafted the purchase agreement and Lincoln Distribution, acting without counsel, sought no changes. The receiver has no knowledge of the negotiations that occurred between Quintar and Lincoln Distribution.

The receiver requested that Quintar obtain a third party opinion on the value of Quintar's assets. Quintar furnished an opinion from American Industrial Truck Repair, Inc. as to the value of the equipment, and from A-Tech Computer Services, Inc. as to the value of the computer equipment. Lincoln Distribution's offer exceeded the two appraisals.

According to the purchase agreement, Lincoln was to pay $60,000 cash and assume all of Quintar's lease liability, including rent from August 1, 1986 through September 30, 1986, the end of the lease peri-od. Lincoln also assumed all outbound handling charges related to goods and inventory in Quintar's warehouse as of July 31, 1986. The agreement provided that if an order approving the sale was not entered by the court by August 15, 1986, Lincoln Distribution could terminate the agreement.

On Monday, August 11, 1986, Quintar served Timothy A. Sullivan, counsel for appellant, with the proposed Purchase Agreement. On Thursday, August 14, at 4:00 p.m., the general counsel for Space Center called appellant's attorney to inform him there would be a hearing on the sale at 8:15 a.m. on the following day. Sullivan asserts that even though he informed the receiver on Monday, August 11, that he would be out of town for the remainder of the week, the receiver did not inform Sullivan that the receiver would be seeking court approval of the sale the following Friday. An attorney in Sullivan's office, who had occasionally worked on the case, appeared at the hearing and objected to the short notice. The trial court overruled appellant's objection and waived the five day rule provided in Rule 6.04 of the Minnesota Rules of Civil Procedure.

On August 15, 1986, the trial court executed the order proposed by the receiver, an order containing no findings or explanation for the decision to approve the sale over objections.

### II. Amitad, Inc.—Sisbros lease.

Amitad has leased warehouse and office space from Sisbros, Inc., another company related to Space Center. The lease ran through 1989. Amitad sublet the space to various other sublessees, including two major subtenants, Control Data Corporation and a toy company. When these sublessees were using the space the arrangement

---

**1.** As indicated in our prior decision, appellant states credible questions whether the receiver acts singularly for the owner of the corporations, Space Center, Inc., and whether the judgment creditor's rights have been improperly disregarded. We note in addition to our holdings in these cases the manner in which the handling of litigation, including these appeals, enlarges the appearances of impropriety. Throughout these proceedings the receiver appears with counsel but permits further appearances on his behalf by counsel for the corporations, presumably as a charge against the receivership estate. The role and the expense of corporate counsel in serving the receiver requires further scrutiny of the receiver and the trial court.

was profitable for Amitad. On January 1, 1986, the toy company vacated its space, making the arrangement unprofitable. In July 1986, Control Data Corporation announced it was terminating its lease within 30 days. At that time the receiver began negotiations to terminate the lease with Sisbros. This termination eliminated a contingent rent liability for the remainder of the lease term. The receiver states he did not attempt to assign the lease because Amitad had not successfully obtained a new sublessee for the space vacated by the toy company and he anticipated similar difficulties filling the space previously occupied by Control Data. Further, the receiver felt that assignment of the lease would be unwise because as an operating and liquidating receiver there was no certainty as to his term.

At the August 15, 1986 hearing, the receiver asked for court approval of his choice to surrender the Sisbros lease. Without addressing the merits of the action, the trial court executed a proposed approval order.

### III. Amitad, Inc.—Wichita lease.

Amitad engaged the corporate finance group of Mark Twain Bankshares, a major Missouri bank, to locate a purchaser for Wichita Warehouse, an Amitad asset. Mark Twain Bankshares introduced Garvey Public Warehouses, Inc. to the receiver during the summer of 1986 and the receiver negotiated an agreement with Garvey. On September 2, 1986, the receiver appeared before the court ex parte and the court approved the sale and entered its order the same day. The sale was closed later that day. Garvey then moved the goods stored by Wichita to its own premises. Wichita's lease for its premises was to expire on December 31, 1986.

Appellant MBC, Inc. claims they were not notified of the hearing on the application to sell Wichita Warehouse and had no opportunity to make a record concerning the sale. The court summarily granted the receiver's application without making any findings.

### ISSUE

Do the trial court's orders require explanatory findings?

### ANALYSIS

■ 1. The receiver questions whether the trial court decisions are appealable under Minn.R.Civ.App.P. 103.03(b) and (e), the provisions noted in appellant's statement of the case submitted in compliance with Minn.R.Civ.App.P. 133.03. The trial court's asset disposition orders are final decisions affecting substantial rights in a special proceeding and are appealable under Minn.R.Civ.App.P. 103.03(g). *See Hospes v. Northwestern Manufacturing & Car Co.*, 41 Minn. 256, 258–59, 43 N.W. 180, 181 (1889). Contrary to respondent's assertions, the statement of the case is not of jurisdictional significance such that its content regarding appealability eliminates appeal under provisions of the rules not cited in the document.

■ Respondent also claims the issues raised on the appeal are moot because of the completion of transactions with third parties. If the Quintar and Amitad-Sisbro transactions were with insider-related entities, the trial court could fashion a remedy appropriate to redress any demonstrated wrongdoing. The existence of remedies on the Wichita Warehouse transaction is less likely, but this is impossible to ascertain from the sparse record on the transaction. We conclude the issues raised by appellant are not moot.

Finally, we have examined and also deny other procedural motions submitted by or for respondent.

■ 2. Appellant challenges the merits of the receiver's disposition of assets and the absence of appropriate notice to permit their presentation of questions and objections to the trial court. It claims the trial court abused its discretion in approving the sale of Quintar, Inc. assets, based on claims that the sale to a related entity was suspect, the price was grossly inadequate, and the sale was proposed and approved

without the benefit of information as to the value of the assets in the market place. *See Northland Pine Co. v. Northern Insulating Co.*, 145 Minn. 395, 398–99, 177 N.W. 635, 636–37 (1920) (abuse of discretion will be found where a judicial sale is made for such a grossly inadequate price as to raise an inference of unfairness, fraud or mistake). Dispute on cancellation of the Sisbros lease is similarly founded on the need for scrutiny of an inside transaction that allegedly involves surrender of a low rent lease without adequate consideration. As to each of these transactions, and especially as to the receiver's action on the Wichita Warehouse lease, appellant does not purport that the record fully supports its claims, but contends presentation of facts and claims to the trial court was precluded by legally inadequate notice of trial court proceedings.

For reasons like those given for our prior decision, we do not address the merits of disputes on the three transactions challenged by the judgment creditor. At least two of those transactions are with related entities. The receiver's action occurred during the pendency of strenuous objections of the judgment creditor about transactions favoring Space Center, Inc., the parent corporation for Amitar, Inc. and Quintad, Inc. The receiver proposed summary proceedings without usual notice, and in one instance sought ex parte relief. The issues are complex, calling for insights of the trial court based on extensive contact with the case. In these circumstances, we conclude that appellate review is improperly hampered if the actions of the trial court are not explained.

Special trial court findings are required for orders resolving a factual dispute tried before the court. Minn.R.Civ.P. 52.01. The findings are an integral part of judicial action under the rule of law. They lead the court to apply appropriate standards, permit scrutiny of the decision by the parties, and facilitate meaningful appellate review. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). As we observed before, the supreme court has pointed out the particular importance of find-

ings where trial court discretion on the subject is great. *Amitad*, 397 N.W.2d at 596.

Not every trial court conclusion requires findings. The appellate court can independently review the evidence in a case where the record is reasonably clear and the facts are not seriously disputed. *Bowman v. Brooklyn Pet Hospital*, 311 Minn. 526, 527, 247 N.W.2d 424, 425 (1976). This is not such a case. The record here is complex and incomplete, and the parties seriously dispute whether a substantial judgment creditor is being materially deprived of its remedies.

### DECISION

We reverse and remand for an appropriate hearing and for findings sufficient to demonstrate the trial court's view of the evidence and its application of the law.

Reversed and remanded.